JUSTIN A. BRACKETT (HI Bar No. 9954)
1888 Kalakaua Avenue, Suite C-312
Honolulu, HI 96815
Telephone: (808) 377-6778
Email: justinbrackettlaw@gmail.com

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARIA SNYDER,<br><br>                    Plaintiff,<br><br>      vs.<br><br>CACH, LLC, and<br>MANDARICH LAW GROUP, LLP,<br>DAVID N. MATSUMIYA, and<br>TREVOR OZAWA,<br><br>                    Defendants. | CASE NO. 1:16-CV-174<br><br>COMPLAINT FOR DAMAGES<br>DECLARATORY AND INJUNCTIVE<br>RELIEF, EXHIBITS 1 THROUGH 5,<br>and VERIFICATION<br><br>JURY TRIAL REQUESTED |

## COMPLAINT

## INTRODUCTION

1.     Jurisdiction of this Court arises under 28 U.S.C. § 1331 pursuant to 15 U.S.C. § 1692k(d) as well as 28 U.S.C. § 1367 (supplemental jurisdiction).

2.     This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), in their illegal efforts to collect a consumer debt. This is also an action for damages against the Defendants for unfair or deceptive acts or practices in the conduct of trade or

commerce in violation of Sections 443B-18, 19, and 20 of the Hawaii Revised Statutes.

3.      Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

## PARTIES

4.      Plaintiff Maria Snyder (hereinafter "Plaintiff" and/or "Ms. Snyder") is a natural person who resides in Honolulu County, Hawai'i, and a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and a "Debtor" as that term is defined by Haw. Rev. Stat. § 443B-1.

5.      Defendant CACH, LLC (hereinafter "Defendant CACH") is a "debt collector" as defined by 15 U.S.C. § 1692a(6), and a for-profit corporation organized in Colorado, and maintains The Corporation Company, 1675 Broadway, Denver, CO 80202-4675, as its registered agent for service of process.

6.      Defendant Mandarich Law Group, LLP (hereinafter "Defendant Mandarich" or "Mandarich") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), a for-profit corporation organized in California that maintains Robert E. Chapman, 700 Bishop Street, Suite 2100, Honolulu, HI 96813, as its registered agent for service of process.

7.      Defendant David Matsumiya (hereinafter "Defendant Matsumiya" or "Mr. Matsumiya") is a "debt collector" as that term is defined by 15 U.S.C. §

1692a(6), and an employee or agent of Defendant Mandarich.  He can be served

through Defendant Mandarich at Robert E. Chapman, 700 Bishop Street, Suite 2100,

Honolulu, HI  96813, as its registered agent for service of process.

8.     Defendant Trevor Ozawa (hereinafter "Defendant Ozawa" or "Mr.

Ozawa") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and an

employee or agent of Defendant Mandarich.  He can be served through Defendant

Mandarich at Robert E. Chapman, 700 Bishop Street, Suite 2100, Honolulu, HI

96813, as its registered agent for service of process.

9.     Other defendants may be discovered in the course of litigation, and

Plaintiff respectfully prays that the Court will permit the addition of later

discovered parties upon motion.

## FACTUAL ALLEGATIONS

10.     Defendants have alleged that Ms. Snyder incurred an obligation to pay

money arising out of a transaction in which the money, property, insurance or

services which are the subject of the transaction are primarily for personal, family

or household purposes, and this debt is therefore a "debt" as that term is defined by

15 U.S.C. § 1692a(5).  More specifically, this debt is a credit card debt originally

owed to, or serviced by, MBNA America Bank, N.A.

11.     MBNA America Bank, N.A.'s assets were purchased by, and

transferred to, Bank of America in 2006.  Therefore, the original account will be

3

referred to as the Bank of America Account throughout the remainder of this Complaint.

12.     The primary purpose of all Defendants' businesses is the collection of debts.

13.     Although they conduct business and receive income in the State of Hawaii, neither Defendant CACH, nor Defendant Mandarich has a Hawaii General Excise Tax license.

14.     Defendant Mandarich actively collects debts in the State of Hawaii by sending letters, making telephone calls, and suing Hawaii residents.

15.     Defendant CACH is not licensed to conduct any business in the State of Hawaii.

### *Bank of America's Reporting to the Equifax Credit Reporting Agency*

16.     Equifax is a consumer credit reporting agency as defined in 15 U.S.C. § 1681a(f), and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing credit reports to third parties.

17.     Ms. Snyder obtained a copy of her Equifax credit report dated June 23, 2015.   That report shows that Bank of America has been communicating information to Equifax about the alleged debt.   ***Copy filed as Exhibit 1.***

18.     Bank of America has been communicating information regarding the debt to Equifax, with the account reported by Bank of America as being charged-off with a "Date of First Delinquency" of March, 2009. ***See Ex. 1.***

19.     Bank of America reported to Equifax that the balance of Ms. Snyder's account at the time of charge-off was $8,064. ***See Ex. 1.***

### ***The April 15, 2015 Civil Complaint***

20.     On April 15, 2015, a state court collection lawsuit, which included a Civil Complaint and sworn Declaration, was caused by Defendants to be filed against Plaintiff in the District Court for the First Circuit, Honolulu Division, State of Hawai'i. . ***Copy filed as Exhibit 2.***

21.     The Civil Complaint filed in Hawai'i District Court as Civil Case # 1RC15-1-02967 was a "communication" as defined by 15 U.S.C. § 1692a(2) in connection with collection of the debt and in an attempt to collect the debt. ***See Ex. 2.***

22.     No records of the underlying account were held by Defendant Mandarich at the time of the filing of the Civil Complaint.

23.     Instead, Defendant Matsumiya blindly asserted in the Complaint that:

> On or about *01/31/2010*, [Ms. Snyder] owed money to [Defendant CACH] as follows:   [Defendant CACH] is the assignee of MARYLAND NATIONAL BANK, N.A. and the successor-in-interest to credit account XXXXXXXXXXXX4170.   [Defendant CACH]'s assignor, MARYLAND NATIONAL BANK, N.A. extended [Ms. Snyder] credit in exchange for [Ms. Snyder]'s promise

to pay for the balance of the credit account they used.  [Ms. Snyder] failed to pay MARYLAND NATIONAL BANK, N.A. the balance of the credit account.  [Ms. Snyder] owes [Defendant CACH], as the successor-in-interest to the account, the principal sum of $8064.80.

*See Ex. 2, emphasis in original*.

24.    Defendants go on to demand a "Judgment in the principal amount of $8064.80.  In addition, the Court may award court costs, interest and reasonable attorney's fees." *See Ex. 2.*

25.    Defendant's representative, Mr. Matsumiya declares: "I have read this Complaint, know the contents and verify that the statements are true to my personal knowledge and belief.  **I DECLARE UNDER PENALTY OF PERJURY THAT THE ABOVE IS TRUE AND CORRECT**." *See Ex. 2* (emphasis in original).

26.    The Declaration of Mr. Matsumiya was a "communication" as defined by 15 U.S.C. § 1692a(2) in connection with collection of the debt.  *See Ex. 2.*

27.    A declaration filed in support of a civil complaint on a sworn account is filed to attest to the correctness of the amount allegedly owed on the account and the overall validity of the account.

28.    The Declaration and Complaint are signed by Defendant Matsumiya. *See Ex. 2.*

29.    There were no supporting documents from Maryland National Bank or Bank of America attached to the Civil Complaint.

30.     Upon information and belief, Mr. Matsumiya did not review any of the records of the originator of this debt prior to signing the Declaration.

31.     Without reviewing any records of the original creditor to determine if there was a contract signed by Ms. Snyder and, if so, whether the amount of the debt as to principal, interest, and late fees was owed by Ms. Snyder, as required by Hawai'i state law for a sworn account, it was impossible for Mr. Matsumiya to truthfully make a sworn declaration as to the legitimacy of the debt she was collecting.

32.     The amount of debt charged-off by Bank of America, and the amount of debt being collected by Defendant CACH in its April 15, 2015 collection lawsuit is $8,064.80. ***See Ex. 1 & 2.***

33.     The statute of limitations for filing the lawsuit in an attempt to collect the alleged debt, a consumer credit card bill, expired no later than April 4, 2015 since the first delinquency date was April 4, 2009. ***See Exhibit 4, p. 22 below.*** *See* Haw. Rev. Stat. §657-1.

34.     Furthermore, and more appropriately, the statute of limitations for filing the lawsuit to collect this debt expired on April 4, 2012 since Bank of America is incorporated in Delaware and Delaware has a three year statute of limitation for a breach of contract claim. *See* Haw. Rev. Stat. §657-9, 10 Del. Code §8106.

35.    Defendant Mandarich filed the lawsuit in an attempt to collect the alleged debt on April 15, 2015.

36.    Defendants knew, or should have known, that the statute of limitations for collection of the alleged debt had expired when they filed a lawsuit against Ms. Snyder.

### *August 13, 2015 Hearing*

37.    Ms. Snyder appeared at a hearing in Hawai'i District Court for Civil Case # 1RC15-1-02967 on August 13, 2015.

38.    Defendant Ozawa was not in attendance when the matter was called before the Court.

39.    Judge Kibe then dismissed the case with prejudice for failure to prosecute.

40.    Ms. Snyder left Court and went home, understanding the case had been dismissed with prejudice.

41.    According to the minutes of the Court, Defendant Ozawa appeared in the Court after Ms. Snyder had left and requested the dismissal be set aside. ***See attached Exhibit 3.***

42.    Judge Kibe set aside the dismissal and directed Defendant Ozawa to notify Ms. Snyder of the judgment being set aside.  ***See Ex. 3.***

43.    Defendant Ozawa never notified Ms. Snyder that the dismissal had

been set aside.

### *August 25, 2015 Motion for Summary Judgment*

44.     Defendants then filed a Motion for Summary Judgment in Hawai'i District Court case # 1RC15-1-02967. ***Copy filed as Exhibit 4.***

45.     Attached to the Motion for Summary Judgment was a Memorandum in Support of Motion signed by Defendant Ozawa.  This Memorandum was a "communication" as defined by 15 U.S.C. § 1692a(2) in connection with collection of the debt and in an attempt to collect the debt. ***See Ex. 4.***

46.     No records of the underlying account were held by Defendant Mandarich at the time they filed the Motion for Summary Judgment.

47.     Instead, Defendant Ozawa blindly asserted in the Motion that:  "In this case, it is undisputed that [Ms. Snyder] defaulted on making timely payments to [Defendant CACH]'s assignee.  [Ms. Snyder] owes [Defendant CACH] the amount of $8064.80 plus court costs." ***See Ex. 4, p. 3.***

48.     To support his assertion, Defendant Ozawa immediately then explains: "Please see attached [Ms. Snyder]'s responses to [Defendant CACH]'s First Request for Admissions attached as Exhibit 'A' and Declaration of Authorized Agent." ***See Ex. 4, p. 3.***

49.     A simple review of Exhibit A to the Motion shows Ms. Snyder denied owing the debt in her responses. ***See Ex. 4, p. 12-13.***

50.    The Declaration of Authorized Agent explains:   "This [Exhibit B Summary] Statement is generated by Plaintiff based on an accurate representation of information provided to [Defendant CACH] from the original creditor at the time of purchase and as also reflected in the Bill of Sale and Redacted Loan Schedule attached hereto as Exhibit "C". *See Ex. 4, p. 5.*

51.    All of the attached exhibits are taken from business records of [Defendant CACH] and [Defendant CACH]'s assignor…." *See Ex. 4, p. 5.*

52.    The Summary Statement attached as Exhibit B was created by [Defendant CACH] for the purpose of litigation and was not from the original creditor. *See Ex. 4, p. 16.*

53.    The Bill of Sale referenced by the Authorized Agent as Exhibit C identifies the assignor as "FIA CARD SERVICES, N.A.", an unknown entity in relation to this account.  There are no assignment statements from MBNA or Bank of America attached to the Motion. *See Ex. 4, p. 18.*

54.    No documents from the original creditor are attached at all.  Instead Defendants demonstrate they relied entirely on spreadsheet data in filing their Motion. *See Ex. 4, p. 20-23.*

55.     That spreadsheet shows a "Current (Sale) Balance" and "Charge Off Balance" of $8,064.80. *See Ex. 4, p. 22.*

56.    The spreadsheet also shows a "First Delq Date" of April 4, 2009. *See*

*Ex. 4, p. 22.*

57.    The spreadsheet also identifies the "Legacy" of the account as "MBNA". *See Ex. 4, p. 22.*

58.    Defendant Ozawa finished the Motion with a Certificate of Service, certifying that he served the Motion upon Ms. Snyder on August 14, 2015.  He somehow then went back in time and signed it on August 13, 2015, after serving her? *See Ex. 4, p. 23.*

59.    In fact, Defendants never served the Motion upon Ms. Snyder. *See attached Declaration.*

60.    Luckily for Ms. Snyder, the Motion was denied by the Court on September 10, 2015 because Defendant Ozawa had not signed it in the appropriate spot. *See Order attached as Exhibit 5.*

61.    Ms. Snyder lucked up again when the Court took it upon itself to notify Ms. Snyder of the Order Denying the Motion for Summary Judgment. Otherwise, she might have never known the case against her was ongoing. *See Ex. 5.*

### *December 3, 2015 Teleconference*

62.    Ms. Snyder's attorney called Defendant Ozawa to discuss the pending state court case on December 3, 2015.

63.    Ms.   Snyder's   attorney   was   routed   to   Defendant   Mandarich's

representative, Mr. Davis.

64.     Mr. Davis acknowledged the original creditor for the account was Maryland credit card (a.k.a. MBNA) with a charge-off amount of $8,064.80.

65.     Mr. Davis asserted he was a debt collector and attempting to collect a debt.

66.     Mr. Davis demanded the amount of $10,476.60 as the current balance owed on the account, which included court costs of $167.78 and accrued interest of $2,225.02.

67.     The December 3, 2015 call was recorded by Defendant Mandarich.

### *Defendants' December 4, 2015 Collection Letter*

68.     On December 4, 2015, Defendant Mandarich sent Ms. Snyder a verification of debt letter demanding $8,064.80 on her Bank of America, N.A. account with an account number ending in 4170. ***Copy filed as Exhibit 6***.

69.     Defendant Mandarich and/or Defendant CACH assigned an account number to the account of 120001326717. ***See Ex. 6.***   This is not the original account number.

70.     Defendant Mandarich attached to the December 4, 2015 collection letter the same March 17, 2010 Bill of Sale and same Loan Schedule as it attached to the August 25, 2015 Motion for Summary Judgment. ***See Ex. 6, p. 3-8.***

71.      Defendant Mandarich also attached a July 23, 2015 Affidavit of Sale

and Certification of Debt to the December 4, 2015 collection letter. ***See Ex. 6, p. 9.***

72.     The a July 23, 2015 Affidavit of Sale and Certification of Debt asserts $8,064.80 was due on March 12, 2010.

### ***Attempting To Collect Interest Waived By Original Creditor***

73.     Under federal banking regulations, a credit card debt must be charged off when it is 180 days overdue (it may be charged off earlier). Federal Financial Institutions Examination Council, Uniform Retail Credit Classification and Account Management Policy, 65 FR 36903 (June 12, 2000).

74.     Defendant CACH was not entitled to demand payment of any amount of interest they added to the account after Bank of America charged off the account and waived the accrual of any additional interest on the account.

75.     Charge-off means that the credit card receivable is no longer carried on a bank's books as an asset.

76.     Pursuant to Defendants' documents, Bank of America charged off the alleged debt on February 17, 2010 in the amount of $8,064.80, and this was the amount of the debt when it was sold by Bank of America on March 12, 2010. ***See Ex. 6, p. 5.***

77.     Defendant CACH demanded $10,476.60 as recently as December 3, 2015, which included interest on the charged-off debt, computed at an unknown rate of interest.

78.    Upon information and belief, Bank of America, from which Defendant CACH allegedly purchased the debt, did not charge interest after charge-off.  This is supported by the fact that Bank of America didn't increase the balance from February 17, 2010 to March 12, 2010, as is demonstrated by Defendants' records. ***See Ex. 6, p. 5 and 9.***

79.    Defendant CACH was not entitled to collect any interest Bank of America did not actually charge during the time when Bank of America owned the debt.

80.    Upon information and belief, it is the policy and practice of Defendant CACH to add interest to debts for the period prior to the date on which it claims to have purchased them, even if the original creditor of the debt did not add interest during that period.

81.    The interest demanded in Defendant CACH's representative on December 3, 2015 also included interest added after the date on which Defendants claim Defendant CACH purchased the debt.

82.    Upon information and belief, Bank of America intentionally did not charge interest after charge-off of the debt.

83.    Upon information and belief, the standard form credit card agreements used by Bank of America provides that it may change the terms of the agreement from time to time, and that changes beneficial to the consumer such as a reduction

14

in, or waiver of interest may be effected immediately and without notice.

84.     Upon information and belief, as a standard practice, and for a variety of sound business reasons (e.g. tax purposes), Bank of America waives interest on credit card debts after charge-off for as long as it holds the debt.

85.     Upon information and belief, Bank of America, in accordance with standard business practices, waived interest on Ms. Snyder's credit card debt after charge-off.

86.     If Bank of America waived the right to add interest post charge-off, Defendant CACH acquired the debt, if at all, subject to that waiver.

87.     Upon information and belief, the amount of the debt Defendant CACH allegedly purchased from Bank of America did not include post charge-off interest.

88.     Upon information and belief, Defendant CACH paid a price for the alleged debt based on the balance stated by Bank of America.

89.     Upon information and belief, it is Defendant CACH's standard practice, after paying a price based on an amount that does not include post-charge off interest, to seek collection of post-charge off interest not charged by the original creditor and which was no longer due pursuant to the agreement between the original creditor and Plaintiff.

90.    The increase in balance as stated by Defendant CACH to Ms. Snyder indicates that pre-judgment interest and/or other fees were being applied to the account despite not being sought or alleged to exist in the collection lawsuit.

91.    The fact that Defendants decreased the balance due when filing the civil complaint, when no payments had been made on the account, shows Defendants knew the correct balance owed, but greedily decided to seek illegitimate interest.

92.    Defendants demand odd amounts from Ms. Snyder: *i.e.* the balance stays the same at $8,064.80 from February 17, 2010 to March 12, 2010, then mysteriously increases to $10,476.60 as of December 3, 2015, then goes back down to $8,064.80 as of December 4, 2015.

93.    A calculation of the time passed and the amounts demanded demonstrates that Defendant CACH added interest at an annual percentage rate of 0.00% from February 17, 2010 to March 12, 2010, but then increased it to 4.669% from March 12, 2010 to December 3, 2015. ***See Exhibits***.

94.    In direct contradiction to the amount of interest they added to the account, Defendants asserted in their September 1, 2015 letter that the account had an interest rate of 9.99%. ***See Ex. 2, p. 22 & Ex. 6, p. 7***.

95.    By communicating to Ms. Snyder that she owed a different and greater amount than what Ms. Snyder actually owed, Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(10), and 1692f(1).

96.    Ms. Snyder has complied with all conditions precedent to bring this action.

**CAUSES OF ACTION**

*COUNT ONE: VIOLATIONS OF*
*THE FAIR DEBT COLLECTION PRACTICES ACT*

**FIRST VIOLATION OF THE FAIR DEBT COLLECTION
PRACTICES ACT:
FALSE OR MISLEADING REPRESENTATIONS**

97.    The acts of Defendants constitute violations of the Fair Debt Collection Practices Act.  Defendants' violations of the FDCPA include, but are not limited to, the use of any false, deceptive, or misleading representations or means in connection with the collection of any debt, which is a violation of 15 U.S.C. § 1692e.

98.    Defendant Ozawa blindly asserted in the Motion that:  "In this case, it is **undisputed** that [Ms. Snyder] defaulted on making timely payments to [Defendant CACH]'s assignee.  [Ms. Snyder] owes [Defendant CACH] the amount of $8064.80 plus court costs." ***See Ex. 4, p. 3*** (emphasis added).

99.    To support his assertion of it being undisputed Ms. Snyder owes the debt, Defendant Ozawa then explains:  "Please see attached [Ms. Snyder]'s

17

responses to [Defendant CACH]'s First Request for Admissions attached as Exhibit 'A' and Declaration of Authorized Agent." *See Ex. 4, p. 3.*

100.   A simple review of Exhibit A to the Motion shows Ms. Snyder denied owing the debt in her responses. *See Ex. 4, p. 12-13.*

101.   Defendant Ozawa's assertion that the debt was indisputably owed to Defendant CACH was a false, deceptive, or misleading representation in connection with the collection of the debt.

102.   Defendant Ozawa never served the August 25, 2015 Motion for Summary Judgment upon Ms. Snyder. *See attached Declaration.*

103.   Defendant Ozawa appeared in Court on September 10, 2015 in support of Defendants CACH's Motion for Summary Judgment and in effort to obtain a judgment against Ms. Snyder.

104.   Ms. Snyder was not notified of the September 10, 2015 hearing.

105.   Since it was never served upon her, Ms. Snyder was unaware of the Motion and instead believed the case had been closed after it was dismissed with prejudice by the Court in the hearing she attended on August 13, 2015.  Luckily, that Motion was denied because Defendant Ozawa failed to sign it in the correct spot. *See Exhibits 3 & 4.*

106.   Defendant Ozawa's attempt to obtain a judgment against Ms. Snyder without ever serving her with the Motion for Summary Judgment or providing her

with notice of the hearing on that Motion was a false, deceptive, or misleading means in connection with the collection of the debt.

107.   Additionally, Ms. Snyder is confused as to how Defendants calculated the amounts owed and what authority they have to demand the additional interest.

108.   A calculation of the time between the communications and the amounts demanded in the communications shows that Defendants are applying an unknown and illegitimate rate of interest to the account.  This makes the balance increase at a rate that does not comply with the terms of the initial contract.

109.   Ms. Snyder asserts that the rate of interest applied to her account by Defendant CACH was not the correct contractual rate of interest on her account.

110.   By assigning different account balances and unknown rates of interest to the underlying account, Defendants have confused Ms. Snyder as to what amount of money she owes on this account.

111.   Defendants have misled Ms. Snyder as to what amount of money she owes on this account.

112.   4.669% is not the contractual rate of interest or a rate allowed by statute.

113.   By adding interest to an account at a rate that does not comply with the original contract or is allowed by any statute, Defendants have engaged in false, deceptive, or misleading representations or means in connection with the

collection of this debt.

114.   By adding interest to an account after the original creditor waived its rights to any further interest, Defendants have engaged in false, deceptive, or misleading representations or means in connection with the collection of this debt.

115.   Defendants demanded interest that was never owed by Ms. Snyder. Such conduct is the use of a false, misleading and deceptive representation or means to collect, or attempt to collect, a debt, and is a violation of 15 U.S.C. §§ 1692e and 1692e(10).

116.   Defendants' act of filing of a lawsuit against Ms. Snyder after the statute of limitations had ran and using a false declaration to support it, was also a false, deceptive, or misleading representation or means in connection with the collection of the debt.

117.   These communications by Defendants were collection communications in violation of numerous and multiple provisions of the FDCPA including, but not limited to, 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692(e)(5), 1692e(10), and 1692(f), amongst others.

**SECOND VIOLATION OF THE FAIR DEBT COLLECTION
PRACTICES ACT:
<u>FALSE OR MISLEADING REPRESENTATIONS</u>**

118.   The acts of Defendants constitute violations of the Fair Debt Collection Practices Act.  Defendants' violations of the FDCPA include, but are

not limited to, the use of false, deceptive, or misleading representations in connection with the character, amount, or legal status of the alleged debt, which is a violation of 15 U.S.C. §1692e(2).

119.   The actual amount of the alleged debt is certainly in question.   It is very confusing as to what amount is owed on this account since the amount of $8,064.80 is charged-off by Bank of America on February 17, 2010; the account balance then stays the same until at least March 12, 2010; then the amount increases to $10,476.60 as of December 3, 2015; but then the amount drastically decreases to $8,064.80 as of December 4, 2015.

120.   Defendants have effectively varied the rates of interest from 0.00%, up to 4.669%, then back down to 0.00%.

121.   Alternatively, Defendants assert the contractual rate of interest was 9.99%. ***See Ex. 2, p. 22 & Ex. 6, p. 7.***

122.   Defendants have made false, deceptive, or misleading representations in connection with the character, amount, or legal status of the alleged debt by charging a rate of interest that does not comply with the terms of the contract.

123.   By demanding amounts that increase by irregular rates of interest, Defendants have deceived Ms. Snyder as to what amount of money, if any, she owes on this account.

124.   Defendants decreased the amount they were demanding back to the

originally charged-off amount without any payments being made on the account, thus demonstrating that Defendants were demanding interest or fees from Ms. Snyder that were never owed.

125.  Defendants are attempting to deceive Ms. Snyder and keep her confused as to the amount owed so that if she were to make payments on this account she would never know the actual amount owed, and instead would keep paying indefinitely on fees, interest, or other charges that were never legally owed by her.

126.  The fact that Defendants decreased the balance due before filing a civil complaint, when no payments had been made on the account, shows that Defendants were attempting to collect amounts in excess of what the contract allowed, in violation of 15 U.S.C. §§ 1692e(2)(A) & 1692f(1).

127.  By adding interest to the amount of the debt purchased from Bank of America that had not been added by Bank of America after charge-off, Defendants violated 15 U.S.C. §§1692e, 1692e(2)(A), 1692e(2)(B), 1692e(10), 1692f, and 1692f(1).

128.  Further, Defendant CACH engaged in a false and deceptive collection practice (contrary to 15 U.S.C. §1692e) and an unfair debt collection practice (contrary to 15 U.S.C. §1692f) by adding unauthorized interest to the alleged debt of Plaintiff.

129. By demanding amounts that were no longer owed, Defendants misled Ms. Snyder as to what amount of money she owes on this account.

130. Defendant Matsumiya asserted the money was due on January 31, 2010. Alternatively, Defendants' supporting documents confirm that the first delinquency date was April 4, 2009, which was when the breach of contract occurred. *See Ex. 2 & 5*.

131. By assigning illegitimate dates to the account in effort to keep collecting it past the statute of limitations, Defendants have made a false representation or implication of the character, extent, or amount of money Ms. Snyder owes.

132. By assigning an illegitimate date to the underlying account, Defendants have attempted to mislead Ms. Snyder as to when she made her last payment on the account and that she still owes the account.

133. The statement by the Defendants in the civil complaint that Ms. Snyder owed $8,064.80 together with an undisclosed amount of interest, court costs and attorney's fees falsely represents the actual amount owed, and is misleading to the least sophisticated consumer as to the amount of debt owed, and is thus a violation of 15 U.S.C. § 1692e(2)(A).

134. The Defendants' false representations of the character, amount or legal status of the debt are a use of a false, deceptive, and misleading representations or means in connection with collection of the debt or in an attempt to collect the debt,

which are a violation of 15 U.S.C. §§ 1692e and 1692e(10), and are an unfair means to collect or attempt to collect the alleged debt in violation of 15 U.S.C. § 1692f.

## THIRD VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT: UNFAIR PRACTICES

135.   Defendants' violations of the FDCPA also include, but are not limited to, the collection of any amount that is not expressly authorized by the agreement creating the debt or permitted by law, which is a violation of 15 U.S.C. §1692f(1).

136.   The December 3, 2015 collection communication between Ms. Snyder's attorney and Defendant Mandarich's representative, Mr. Davis, demanded interest and fees that were never owed by Ms. Snyder.

137.   Ms. Snyder never owed $10,476.60 on this account.

138.   The civil complaint filed by Defendants asserts that Ms. Snyder owes Defendants $8,064.80 in spite of the applicable statute of limitations having already ran on the account.

139.   Defendants knew they had no authority, either by contract or statute, to add interest to the account, and so they removed their illegitimate interest from their demands when they decided to file suit against Ms. Snyder and when they mailed the December 4, 2015 verification letter.

140.   Defendants assert that the contract rate of interest applicable to the account was 9.99% in their Motion for Summary Judgment and December 3, 2015

letter, but they applied an entirely different rate to the account. ***See Ex. 2, p. 22 and Ex. 6, p. 7***.

141.   Defendants are demanding rates of interest that are not authorized by the agreement creating the debt or permitted by law.

142.   Ms. Snyder disputes that the original contract allowed the imposition of interest at a rate of 4.669%, which a simple calculation shows to be the rate Defendants were applying to the account.

### COUNT TWO: VIOLATIONS OF THE HAWAI'I REVISED STATUTES, UNFAIR OR DECEPTIVE ACTS OR PRACTICES

143.   A consumer may bring an action based upon unfair or deceptive acts or practices. Haw. Rev. Stat. §480-2.

144.   Any person may bring an action based on unfair methods of competition declared unlawful by Haw. Rev. Stat. §480.

145.   Ms. Snyder, a consumer, brings this action based upon Defendants' unfair or deceptive acts or practices as well as their unfair methods of competition.

146.   Ms. Snyder has incurred actual damages as a result of Defendants' acts and practices.

### FIRST VIOLATION OF THE HAWAI'I REVISED STATUTES: FALSE OR MISLEADING REPRESENTATIONS

147.   The acts of Defendants constitute violations of the Hawai'i Revised Statutes.   Violations include, but are not limited to, any false representation or

implication of the character, extent, or amount of a claim against a debtor or alleged debtor, or of its status in any legal proceeding.  Such conduct is a violation of Haw. Rev. Stat. § 443B-18(5).

148.   The underlying debt is disputed.

149.   The communications from Defendants demanded amounts from Ms. Snyder that she did not owe.

150.   A calculation of the time between the communications and the amounts demanded in the communications shows that inconsistent and unknown rates of interest and/or fees were being applied to the account by the Defendants.

151.   Furthermore, the account balance changes at rates of interest that do not comply with the terms of the initial contract.

152.   By assigning different account balances and unknown rates of interest to the underlying account, Defendants have made one or more false representations or implications of the character, extent, or amount of money Ms. Snyder owes on this account.

153.   The rate of interest applied to the account by Defendants is not the contractual rate of interest.

154.   By assigning different account balances and interest rates to the same account, and demanding an amount that did not comply with the applicable contractual rate of interest, Defendants made one or more false representations or

implications of the character, extent, or amount of money Ms. Snyder owes.

155.   By demanding an amount they were not entitled to, Defendants made a false representation or implication of the character, extent, or amount of money Ms. Snyder owes on this account.

156.   By attempting to collect unauthorized amounts through false and deceptive communications, Defendants have deceived and/or misled Ms. Snyder as to what amount of money she owes on this account.

157.   By collecting the account past the statute of limitations, Defendants have made a false representation or implication of the character, extent, or amount of money Ms. Snyder owes.

## SECOND VIOLATION OF THE HAWAI'I REVISED STATUTES:
## FALSE OR MISLEADING REPRESENTATIONS

158.   Any representation that an existing obligation of the debtor or alleged debtor may be increased by the addition of attorney's fees, investigation fees, service fees, and any other fees or charges when in fact the fees or charges may not legally be added to the existing obligations is a violation of Haw. Rev. Stat. § 443B-18(8).

159.   Upon information and belief, Ms. Snyder asserts that Defendants did not have authority to impose additional fees on the originating account.

160.   By assessing unwarranted fees or charges, as explained in detail above, Defendants have demanded amounts that are not expressly authorized by

the agreement creating the debt or permitted by law.

161.   Upon information and belief, Ms. Snyder asserts that Defendants did not have authority to collect the debt at all, much less add fees to the account, after the statute of limitations had expired.

## THIRD VIOLATION OF THE HAWAI'I REVISED STATUTES: THE USE OF UNFAIR PRACTICES IN ATTEMPT TO COLLECT A DEBT

162.   Defendants' violations of the Hawai'i Revised Statutes also include the collection of or the attempt to collect any interest or other charge, fee, or expense incidental to the principal obligation unless the interest or incidental fee, charge, or expense is expressly authorized by the agreement creating the obligation and legally chargeable to the debtor or alleged debtor; or unless the interest or incidental fee, charge, or expense is expressly authorized by law.  Such conduct violates Haw. Rev. Stat. § 443B-19(2).

163.   Ms. Snyder asserts that Defendants did not have authority to impose additional interest or fees on the account, and she never owed $10,476.60 on the account.

164.   By assessing illegitimate interest, fees or charges, Defendants have demanded amounts that are not expressly authorized by the agreement creating the debt or permitted by law.

165.   Defendants' December 3, 2015 demand of additional interest or fees

was an attempt to collect an amount not expressly authorized by the agreement.

166. A calculation of the time passed and the amounts demanded demonstrates that Defendants applied a rate of interest to the account that was not the contractual rate of interest.

167. Ms. Snyder asserts that her original contract did not allow for the imposition of interest at a rate of 4.669%.

168. The communications from Defendants demand very odd amounts from Ms. Snyder and she has been deceived by Defendants' addition of illegitimate interest to this account.

## FOURTH VIOLATION OF THE HAWAI'I REVISED STATUTES: THE USE OF UNFAIR PRACTICES IN ATTEMPT TO COLLECT A DEBT

169. The acts of Defendants constitute violations of the Hawai'i Revised Statutes. Violations include, but are not limited to, the collection of or the attempt to collect from a debtor or alleged debtor all or any part of the collection agency's fees or charges for services rendered. Such conduct is a violation of Haw. Rev. Stat. § 443B-19(3).

170. Upon information and belief, Ms. Snyder asserts that Defendants did not have authority to impose additional fees on the originating account.

171. Defendants are attempting to collect their collection agency fees or charges for services rendered, and is thus are violating Haw. Rev. Stat. § 443B-19.

## FIFTH VIOLATION OF THE HAWAI'I REVISED STATUTES:
## THE USE OF UNFAIR PRACTICES IN ATTEMPT TO COLLECT A
## DEBT

172.   The collection of or the attempt to collect any interest or other charge,

fee, or expense incidental to the principal obligation unless the interest or

incidental fee, charge, or expense is expressly authorized by the agreement creating

the obligation and legally chargeable to the debtor or alleged debtor; or unless the

interest or incidental fee, charge, or expense is expressly authorized by law is a

violation of Haw. Rev. Stat. § 443B-19(4).

173.   The amounts demanded by Defendants have increased and decreased

drastically.

174.   A calculation of the time between the communications and the

amounts demanded in them shows that the balance increased and decreased at rates

that do not comply with the terms of the original contract.

## SIXTH VIOLATION OF THE HAWAI'I REVISED STATUTES:
## FALSE REPRESENTATIONS AND THE USE OF UNFAIR PRACTICES
## IN ATTEMPT TO COLLECT A DEBT

175.   Unfair methods of competition and unfair or deceptive acts or

practices in the conduct of any trade or commerce are unlawful. Haw. Rev. Stat. §

480-2.

176.   All collection agencies that collect debts from any person who resides

or does business in Hawaii must be registered with the Department of Commerce

and Consumer Affairs and must comply with the state's laws and rules.  Haw. Rev. Stat. § 443B.

177.   Defendants collect debts from the people of Hawaii, including Ms. Snyder.

178.   Defendants CACH and Mandarich do not currently hold a Hawaii General Excise Tax license.

179.   Defendants CACH and Mandarich do not pay the Hawaii General Excise Tax for accounts they collect in the State of Hawaii.

180.   Defendants' collection of accounts without paying the Hawaii General Excise Tax provides them an unfair competitive advantage and violates Hawaii laws or rules, therefore it is a violation of **Haw. Rev. Stat. § 443B and Haw. Rev. Stat. § 480**.

181.   As a result of Defendants' actions, Ms. Snyder is entitled to an award of actual damages, statutory damages, as well as an award of costs and attorney fees.

### *Respondeat Superior Liability*

182.   In addition to their individual liability under the FDCPA, the acts and omissions of Defendant Mandarich, Defendant Matsumiya, Defendant Ozawa, and any other debt collectors hired as agents by and for Defendant CACH, and who communicated with Plaintiff as further described herein, were committed within the

time and space limits of their agency relationship with their principal, Defendant CACH.

183.   The acts and omissions by Defendant Mandarich, Defendant Matsumiya, Defendant Ozawa, and any other debt collectors hired as agents by and for Defendant CACH, were incidental to, or of the same general nature as, the responsibilities they were authorized to perform by Defendant CACH in collecting consumer debts.

184.   By committing these acts and omissions against Plaintiff, Defendants Mandarich, Defendant Matsumiya, Defendant Ozawa, and any other debt collectors hired as agents by and for Defendant CACH, were motivated to benefit their principal, Defendant CACH.

185.   Defendant CACH is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors and omissions done in violation of federal and state law by the debt collectors employed as agents by Defendant CACH, including, but not limited to violations of the FDCPA, the Hawai'i Revised Statutes, and any other federal or state consumer protection statutes, in their illegal attempts to collect the debt from Plaintiff.

## TRIAL BY JURY

186.   Plaintiff is entitled to and hereby respectfully demands a trial by jury. US Const. amend. 7.  Fed.R.Civ.P. 38.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that judgment be entered against Defendants and in favor of the Plaintiff as follows:

a)  Declaratory judgment that Defendants violated Ms. Snyder's rights under the Fair Debt Collection Practices Act;

b)  Declaratory judgment that Defendants violated Ms. Snyder's rights under the Hawai'i Revised Statutes;

c)  That Plaintiff be awarded actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every defendant in an amount to be determined at a trial by a jury;

d)  That Plaintiff be awarded statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2);

e)  That Plaintiff be awarded the costs of litigation, including a reasonable attorney fee, pursuant to 15 U.S.C. §1692k(a)(3);

f)  That Plaintiff be awarded actual damages pursuant to Haw. Rev. Stat. § 480-13 in an amount to be determined by a jury at trial;

g)  That Plaintiff be awarded statutory damages of not less than $1,000.00 pursuant to Haw. Rev. Stat. § 480-13;

h)  That Plaintiff be awarded the costs of litigation including a reasonable attorney fee pursuant to Haw. Rev. Stat. § 480-13;

i)      That the Court declare all defenses raised by Defendants to be

        insufficient; and

j)      Such other and further relief, including injunctive relief as may be

        necessary to effectuate the Court's judgment, or as the Court

        otherwise deems just and equitable.

Respectfully submitted this the 14<u>th</u> day of April, 2016.

*/s/ Justin A. Brackett*
Justin A. Brackett, #9954
Attorney for Plaintiff
1888 Kalakaua Avenue, Suite C-312
Honolulu, TN 96815
(808) 377-6778
justinbrackettlaw@gmail.com
