IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARIA SNYDER, | ) | Civ. No. 16-00174 HG-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CACH, LLC; MANDARICH LAW | ) | |
| GROUP, LLP; DAVID N. | ) | |
| MATSUMIYA; TREVOR OZAWA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER GRANTING, IN PART, DEFENDANT CACH, LLC'S MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS (ECF No. 21) and STAYING PROCEEDINGS PENDING ARBITRATION**

Plaintiff Maria Snyder filed a Complaint against Defendants CACH, LLC, Mandarich Law Group, LLP, David N. Matsumiya, and Trevor Ozawa.  Plaintiff's Complaint alleges that the Defendants violated the federal Fair Debt Collection Practices Act and the Hawaii State Unfair or Deceptive Acts or Practices Act in their attempts to collect a debt from Plaintiff.

Defendant CACH, LLC filed a Motion to Compel Arbitration and Dismiss the Claims against all Defendants.  Defendant CACH, LLC asserts that Plaintiff's debt arose from her use of a credit card issued to her by Maryland National Bank, N.A. in October 2005 and transferred to CACH, LLC in March 2010.

1

Defendant CACH, LLC asserts that Plaintiff's credit card account was opened pursuant to a credit card agreement that contained an arbitration provision.  Defendant CACH, LLC argues that the threshold issue of arbitrability is required to be determined by an arbitrator pursuant to the arbitration provision in Plaintiff's credit card agreement.

Defendant CACH, LLC's Motion to Compel Arbitration and Dismiss Claims (ECF No. 21) is **GRANTED, IN PART.**

Proceedings are **STAYED** pending the arbitrator's ruling on the threshold question of arbitrability.

## PROCEDURAL HISTORY

On April 14, 2016, Plaintiff Maria Snyder filed a Complaint against Defendants CACH, LLC, Mandarich Law Group, LLP, David N. Matsumiya, and Trevor Ozawa.  (Complaint, ECF No. 1).

On July 5, 2016, Defendant CACH, LLC filed DEFENDANT CACH'S MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS.  (ECF No. 21).

On July 21, 2016, Plaintiff filed PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS.  (ECF No. 26).

On August 4, 2016, Defendant CACH, LLC filed its REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS. (ECF No. 28).

On September 20, 2016, Plaintiff filed PLAINTIFF'S NOTICE OF FILING SUPPLEMENTAL AUTHORITY IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT CACH'S MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS.  (ECF No. 31).

On September 23, 2016, Defendant CACH, LLC filed CACH, LLC'S RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY IN REGARDS TO CACH, LLC'S MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS.  (ECF No. 32).

On October 18, 2016, the Court issued a Minute Order requesting additional briefing from the Parties.  (ECF No. 33).

On October 26, 2016, Defendant CACH, LLC filed DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS RE: ROSS V. BANK OF AMERICA AND CHOICE OF LAW. (ECF No. 34).

On November 2, 2016, Plaintiff filed PLAINTIFF'S SUPPLEMENTAL RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS IN RE: ROSS V. BANK OF AMERICA AND CHOICE OF LAW.  (ECF No. 35).

On November 10, 2016, the Court held a hearing on DEFENDANT CACH, LLC'S MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS. (ECF No. 38).

**BACKGROUND**

Plaintiff Maria Snyder asserts that in October 2005 she opened a credit card account with Maryland National Bank, N.A. In 2006, the account was transferred to Bank of America, N.A. (USA), also known as FIA Card Services, Inc. ("Bank of America"). (Complaint at ¶¶ 10-11, ECF No. 1).

Plaintiff alleges that in March 2009, Bank of America reported to Equifax that Plaintiff had a delinquent credit card balance in the amount of $8,064. (Complaint at ¶ 19, ECF No. 1; Equifax Credit Report attached as Ex. 1 to Complaint, ECF No. 1-1).

On February 23, 2010, Bank of America entered into a settlement in a federal class-action lawsuit in <u>Ross v. Bank of America, N.A. (USA)</u>, MDL No. 1409, Civ. No. 07-7116 (S.D. N.Y. 2010). Plaintiff claims that pursuant to the settlement agreement, Bank of America agreed that it would not enforce the arbitration provisions set forth in certain credit card agreements, including hers.

According to Defendant CACH, LLC, the <u>Ross</u> settlement is not applicable to Plaintiff because Plaintiff's credit card account was transferred from Bank of America to Defendant CACH, LLC before the <u>Ross</u> settlement was finalized. (See Affidavit of Sale and Certification of Debt attached as Ex. B to Def.'s Motion, ECF No. 21-2).

On April 15, 2015, Defendant CACH, LLC, with the assistance of Defendant Attorney David N. Matsumiya and Defendant Mandarich Law Group, filed a lawsuit in the District Court of the First Circuit, State of Hawaii. (Complaint at ¶¶ 20-28, ECF No. 1; State Court Complaint in <u>CACH, LLC v. Snyder</u>, filed on April 15, 2015, attached as Ex. 2 to Pla.'s Complaint, ECF No. 1-2). The lawsuit was filed against Plaintiff Snyder in an attempt to collect her credit card debt. (<u>Id.</u>)

On August 25, 2015, in the Hawaii State Court proceedings, Defendant CACH, LLC filed a Motion for Summary Judgment. Defendant Trevor Ozawa, an attorney with Defendant Mandarich Law Group, was involved in the effort to collect Plaintiff Snyder's credit card debt. (Complaint at ¶ 44, ECF No. 1; Motion for Summary Judgment filed in State Court in <u>CACH, LLC v. Snyder</u>, filed on August 25, 2015, attached as Ex. 4 to Pla.'s Complaint, ECF No. 1-4).

The Hawaii State Court judge denied the Motion for Summary Judgment. (Complaint at ¶ 60, ECF No. 1; Order Denying CACH, LLC's Motion for Summary Judgment filed in State Court in <u>CACH, LLC v. Snyder</u>, filed on Sept. 10, 2015, attached as Ex. 5 to Pla.'s Complaint, ECF No. 1-5).

According to the Hawaii State Court's Docket, the case was dismissed on December 17, 2015, when Defendant Ozawa did not

appear at a hearing.   (Minutes for Hearing dated December 17, 2015, <u>CACH, LLC v. Snyder</u>, 1RC 15-1-002967).

Approximately four months later, on April 14, 2016, Plaintiff filed her Complaint in this Court.  Plaintiff's Complaint alleges violations of the federal Fair Debt Collection Practices Act and the Hawaii State Unfair or Deceptive Acts or Practices Act against all Defendants for their alleged actions in trying to recover the credit card debt in Hawaii State Court. (Complaint, ECF No. 1).

In the case before the Court here, Defendant CACH, LLC filed a Motion to Compel Arbitration on behalf of itself and the remaining Defendants as its agents.  Defendant CACH, LLC asserts that the threshold questions of arbitrability are matters that should be decided by an arbitrator and not the Court.  Defendant CACH, LLC argues that the clear and unmistakable language contained in the arbitration provision of the Plaintiff's Credit Card Account Agreement mandates that an arbitrator decide the issues of arbitrability.

## <u>STANDARD OF REVIEW</u>

The Federal Arbitration Act provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at

law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Federal Arbitration Act reflects a "liberal federal policy favoring arbitration agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).

Pursuant to the Federal Arbitration Act, parties to an arbitration agreement may seek an order from the District Court to compel arbitration. 9 U.S.C. § 4. The "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate the dispute. The court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any agreement within the coverage of the Act.'" Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985) (internal citations omitted). The Federal Arbitration Act mandates that District Courts "shall" direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been agreed. Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985).

There is a presumption that courts will decide which issues are arbitrable. Oracle America, Inc. v. Myriad Group A.G., 724 F.3d 1069, 1072 (9th Cir. 2013). The presumption is overcome when there is clear and unmistakable evidence that the parties

7

agreed to arbitrate threshold questions of arbitrability.  <u>Rent-A-Center, West, Inc. v. Jackson</u>, 561 U.S. 63, 69 (2010); <u>Momot v. Mastro</u>, 652 F.3d 982, 988 (9th Cir. 2011).  The language of an arbitration agreement may establish if the question of arbitrability is for the court or an arbitrator.  <u>Fadal Machining Ctrs, LLC v. Compumachine, Inc.</u>, 461 Fed. Appx. 630, 632 (9th Cir. 2011).

## **ANALYSIS**

### I.   **Plaintiff Entered Into a Credit Card Account Agreement that Contained an Arbitration Provision**

The contract at issue is the Credit Card Account Agreement entered into by Plaintiff Maria Snyder and Maryland National Bank, N.A. in 2005.  (Credit Card Account Agreement, attached as Ex. 2 to Declaration of Yekaterina Livits ("Livits Decl."), ECF No. 21-5).

Plaintiff takes the position that she did not enter into the Credit Card Account Agreement. (Pla.'s Opp. at p. 2, 11, ECF No. 26).

Defendant CACH, LLC attached the Declaration of Yekaterina Livits to its Motion to Compel Arbitration.  (Livits Decl. attached to Def.'s Motion, ECF No. 21-3).  Livits stated in her Declaration that she has personal knowledge of Plaintiff's debt and Credit Card Account Agreement as "custodian of records for CACH and based on [her] review of CACH's business records [that]

8

were maintained in the regular course and scope of business."
(Id. at ¶ 5).

Livits stated in her Declaration that Plaintiff received a
Credit Card Account Agreement from Maryland National Bank, N.A.
on or about October 14, 2005, when she opened a credit card
account with Maryland National Bank, N.A.  (Id. at ¶ 7).

According to Livits' Declaration, on March 19, 2010,
Plaintiff Snyder's credit card account debt was transferred to
Defendant CACH, LLC in the amount of $8,064.80 with an account
number that ended in 3447.  (Id. at ¶¶ 8-12).  A copy of the Loan
Sale and the Loan Schedule, which listed Plaintiff's name and
corresponding account number, was attached to the Livits
Declaration.  (Loan Sale and Loan Schedule Documents attached as
Ex. 1 to Livits Decl., ECF No. 21-4).

A copy of the Credit Card Account Agreement that was
provided to Plaintiff Snyder was also attached to the Livits
Declaration.  (Credit Card Account Agreement, attached as Ex. 2
to Livits Decl., ECF No. 21-5).  The Credit Card Account
Agreement stated Plaintiff's name "MARIA V P SNYDER" on the front
page.  (Id. at p. 1).

Plaintiff's main contention is that "Defendants produced no
competent evidence that Ms. Snyder actually signed anything
agreeing to arbitrate disputes arising out of the FDCPA or
otherwise."  (Pla.'s Opp. at p. 2, pp. 11-13, ECF No. 26).

The Declaration of Livits, as the custodian of records, is sufficient to demonstrate that the Credit Card Account Agreement existed.  Fed. R. Evid. 803(6); Davis v. CACH, LLC, 2015 WL 913392, *4 (N.D. Cal. March 2, 2015) (finding the Declaration of Yekaterina Livits was sufficient to consider the Cardmember Agreement at issue for purposes of the Motion to Compel Arbitration); Cage v. CACH, LLC, 2014 WL 2170431, *2-*3 (W.D. Wash. May 22, 2014).

Signatures are not necessary to bind a credit card holder to the credit card account agreement.  Krulee v. Receivables Performance Management, LLC, 2015 WL 3638546, *4 (N.D. Cal. June 11, 2015); Cage v. CACH, LLC, 2014 WL 2170431, *3 (W.D. Wash. May 22, 2014); Stinger v. Chase Bank, USA, NA, 265 Fed. Appx. 224, 227 (5th Cir. 2008).  By using the card, Plaintiff demonstrated an intent to be bound by the terms of the Credit Card Account Agreement.  Ackerberg v. Citicorp USA, Inc., 898 F.Supp.2d 1172, 1176 (N.D. Cal. 2012).

Defendant CACH, LLC provided a copy of the Credit Card Account Agreement.  Defendant CACH, LLC submitted evidence that Plaintiff entered into an agreement that contained an arbitration provision.

## II.  The Federal Arbitration Act Applies in This Case

When confronted with an arbitration provision in an agreement, the District Court must first consider whether the agreement at issue is of the kind covered by the Federal Arbitration Act.  In re Van Dusen, 654 F.3d 838, 844-45 (9th Cir. 2011).

The Federal Arbitration Act applies to any written provision to arbitrate disputes in a contract arising out of a transaction involving interstate commerce.  9 U.S.C. § 2; Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983).  The Act reflects a "national policy favoring arbitration" and emphasizes that valid arbitration agreements must be rigorously enforced. Am. Ex. Co. v. Italian Colors Rest., 133 S.Ct. 2304, 2308-09 (2013); Preston v. Ferrer, 552 U.S. 346, 349 (2008).  The principal purpose of the Federal Arbitration Act is to ensure that private arbitration agreements are enforced according to their terms.  AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011).

The Federal Arbitration Act applies in this case.  The Credit Card Account Agreement stated, "[t]his arbitration agreement is made pursuant to a transaction involving commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ('FAA')."  (Credit Card Account Agreement at p. 28, ECF No. 21-5).  The Federal Arbitration Act applies to arbitration

11

provisions in consumer credit card account agreements.  Krause v.
Barclays Bank Delaware, 2013 WL 6145261, *2 (E.D. Cal. Nov. 21,
2013) (citing Allied-Bruce Terminix Cos., Inc. v. Dobson, 513
U.S. 265, 274-75 (1995) (finding the interstate commerce
requirement should be construed broadly to include all activities
that merely affect interstate commerce)).

## III. The Threshold Question of Arbitrability

     The primary purpose of the Federal Arbitration Act is to
ensure that private agreements to arbitrate are enforced
according to their terms.  Stolt-Nielson S.A. v. AnimalFeeds
Int'l Corp., 559 U.S. 662, 682 (2010).  Courts must give effect
to the contractual rights and expectations of the parties.  Id.
(citing Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland
Stanford Junior Univ., 489 U.S. 468, 479 (1989)).  The parties'
intentions control.  Mitsubishi Motors Corp. v. Soler Chrysler-
Plymouth, Inc., 473 U.S. 614, 626 (1985).

     Defendant CACH, LLC argues that pursuant to the Credit Card
Account Agreement at issue, threshold questions of arbitrability
must be decided by an arbitrator, and not the Court.  (Def.'s
Response to Pla.'s Supp. Brief at pp. 6-7, ECF No. 34).

     There is a presumption that courts will decide which issues
are arbitrable.  Oracle America, Inc. v. Myriad Group A.G., 724
F.3d 1069, 1072 (9th Cir. 2013).  Arbitrability is an issue for

12

judicial determination unless the parties provided otherwise. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002).

The United States Supreme Court has held that, despite the presumption that courts should decide which issues are arbitrable, the parties may agree to arbitrate the arbitrability of their dispute.  Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 69 (2010).  "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) (internal quotation marks omitted) (quoting AT&T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 643, 649 (1986)).

The language of an arbitration agreement may establish if arbitrability is for the court or delegated to an arbitrator. Fadal Machining Ctrs, LLC v. Compumachine, Inc., 461 Fed. Appx. 630, 632 (9th Cir. 2011).  Such clear and unmistakable evidence can include a course of conduct demonstrating assent or an express agreement.  Momot v. Mastro, 652 F.3d 982, 988 (9th Cir. 2011).

In Momot v. Mastro, 652 F.3d 982, 987-88 (9th Cir. 2011), the Ninth Circuit Court of Appeals reviewed an allocation agreement between investors in a restaurant.  The language of the agreement in Momot provided as follows:

> (a) Arbitration.  If a dispute arises out of or relates
> to this Agreement, the relationships that result from

13

> this Agreement, the breach of this Agreement or the
> validity or application of any of the provisions of
> this Section 4, and, if the dispute cannot be settled
> through negotiation, the dispute shall be resolved
> exclusively by binding arbitration.

Id. at 988.

The Ninth Circuit Court of Appeals held there was clear and unmistakable evidence that the parties agreed to arbitrate threshold issues of arbitrability.  The appellate court determined that the arbitration provision delegated authority to the arbitrator to determine "the validity or application of any of the provisions of the arbitration clause." Id. at 987.  The Ninth Circuit Court of Appeals held that the language in the agreement required an arbitrator to decide threshold questions of arbitrability, not the District Court.  Id. at 988.

### A.    Arbitration Provision in Plaintiff's Credit Card Account Agreement

In this case, the Credit Card Account Agreement contains a similar arbitration provision to the one at issue in Momot.  Page 27 of the Credit Card Account Agreement contained an "ARBITRATION AND LITIGATION" section.  (Credit Card Account Agreement at p. 27, attached as Ex. 2 to Livits Decl., ECF No. 21-5).  The Arbitration and Litigation Section of the Credit Card Account Agreement contained the following provision:

> Any claim or dispute ("Claim") by either you or us
> against the other, or against the employees, agents or
> assigns of the other, arising from or relating in any

14

way to this Agreement or any prior Agreement on your account (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief), including Claims regarding the applicability of this Arbitration and Litigation Section or the validity of the entire Agreement or any prior Agreement, shall be resolved by binding arbitration.

(Credit Card Account Agreement at pp. 27-28, ECF No. 21-5).

The language in the Arbitration and Litigation Section of the Credit Card Account Agreement is clear.  It specifically states that the applicability or validity of the arbitration provision "shall be resolved by binding arbitration."  (Id. at p. 28).

**B.    The Language in the Arbitration Provision Evidences a Clear and Unmistakable Intent of the Parties to Delegate Questions of Arbitrability to the Arbitrator**

The language of the Credit Card Account Agreement demonstrates a clear and unmistakable intention to arbitrate threshold issues concerning the validity and applicability of the arbitration provision contained in the Credit Card Account Agreement.  Momot, 652 F.3d at 987; Mohamed v. Uber Tech., Inc., 836 F.3d 1102, 1110 (9th Cir. 2016) (finding the contract clearly and unmistakably delegated the question of arbitrability to the arbitrator).

Other federal District Courts examining similar arbitration provisions have found the arbitrator was required to rule on threshold questions of arbitrability.  Orlob-Radford v. Midland

15

Funding, LLC, 2016 WL 5859002, *7 (E.D. Wash. Oct. 5, 2016); Cote v. Barclays Bank of Delaware, 2015 WL 251217, *3 (S.D. Cal. Jan. 20, 2015); Krause v. Braclays Bank Delaware, 2013 WL 6145261, *3 (E.D. Cal. Nov. 21, 2013); Gillette v. First Premier Bank, 2013 WL 3205827, *2 (S.D. Cal. June 24, 2013); see Johnson v. Santander Consumer USA, Inc., 2015 WL 7567483, *2 (D. Az. Nov. 25, 2015).

Plaintiff has raised a number of arguments in her Opposition and subsequent briefing concerning the validity and scope of the arbitration provision at issue.  Plaintiff challenges the applicability of the arbitration provision to her causes of action and questions the enforceability of the provision. Plaintiff argues that the arbitration provision is not applicable to her because Bank of America entered into a settlement and agreed not to enforce such provisions in Ross v. Bank of America, N.A. (USA), MDL No. 1409, Civ. No. 07-7116 (S.D. N.Y. 2010). Plaintiff's arguments are threshold questions for the arbitrator.

The facts in Orlob-Radford v. Midland Funding, LLC, 2016 WL 5859002, *7 (E.D. Wash. Oct. 5, 2016) are similar to the facts of this case.  In Orlob-Radford, the plaintiff opened a credit card account with Bank of America in 2003, and her account was purchased by a third-party in 2011.  Id. at *1.  The plaintiff filed a complaint in federal district court against the third-

16

party debt collector for causes of action relating to collection of her credit card debt.  Id. at *2.

The defendant debt collector filed a motion to compel arbitration.  The plaintiff opposed the motion, asserting that the arbitration clause in her credit card agreement was unenforceable pursuant to the Bank of America settlement in Ross v. Bank of America, N.A. (USA), MDL No. 1409, Civ. No. 07-7116 (S.D. N.Y. 2010) along with a number of other challenges to the validity and applicability of the arbitration agreement.  Orlob-Radford, 2016 WL 5859002, at *7.

The Eastern District of Washington district court held that the Bank of America credit card agreement, which is similar to the agreement in this case, contained "clear and unmistakable evidence of a delegation of the issue of arbitrability to an arbitrator."  Id.  The district court ruled that plaintiff's arguments relating to the Ross settlement and other arguments concerning the applicability and enforceability of the agreement "must be made to an arbitrator."  Id.

Just as in Orlob-Radford, the arbitration provision in the Credit Card Account Agreement in this case contains clear and unmistakable language of the parties' intent to have questions of arbitrability be decided by an arbitrator, not the District Court.  Momot, 652 F.3d at 987; Mohamed, 836 F.3d at 1110.

17

Defendants' Motion to Compel Arbitration (ECF No. 21) is **GRANTED, IN PART.**

The Federal Arbitration Act provides that the Court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

The Court may dismiss the case in favor of arbitration if it is clear that all claims are subject to arbitration. See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1060 (9th Cir. 2004); Sparling v. Hoffman Const. Co., Inc., 864 F.2d 635, 637-38 (9th Cir. 1988).

Here, there is a dispute as to the threshold question of the applicability of the Ross settlement to Plaintiff's arbitration agreement. The case is **STAYED** pending resolution of that question.

## CONCLUSION

Defendant CACH, LLC's MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS (ECF No. 21) is **GRANTED, IN PART.**

Pursuant to 9 U.S.C. § 3, the proceedings are **STAYED** pending resolution of the applicability of the <u>Ross</u> settlement to Plaintiff's arbitration agreement.

IT IS SO ORDERED.

DATED: November 16, 2016, Honolulu, Hawaii.



_____
Helen Gillmor
United States District Judge

<u>Maria Snyder v. CACH, LLC, Mandarich Law Group, LLP; David N. Matsumiya; Trevor Ozawa</u>; Civ. No. 16-00174 HG-KSC; **ORDER GRANTING, IN PART, DEFENDANT CACH, LLC'S MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS (ECF No. 21) and STAYING PROCEEDINGS PENDING ARBITRATION**